UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Anthony Harry
_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

**COMPLAINT**

under the
Civil Rights Act, 42 U.S.C. § 1983
(Prisoner Complaint)

-against-

Correction Officer Diona Velez

Correction Officer Jeremy Rodriguez

Jury Trial: ☑ Yes ☐ No
(check one)

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

I.  **Parties in this complaint:** ( I am not incarcerated- )

A.  List your name, identification number, and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff        Name  Anthony Harry
         ID # _____
         Current Institution _____
         Address  89-54  218  Place
              Queens  Village, NY, 11427

B.  List all defendants' names, positions, places of employment, and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1     Name Correction Officer Diona Velez  Shield # 14537
         Where Currently Employed Eric M. Taylor Center
         Address  10-10  Hazen  Street
              East  Elmhurst, NY, 11370

*Rev. 05/2010*         Page  1

Defendant No. 2    Name Correction Officer Jeremy Rodriguez    Shield # 6908

Where Currently Employed Eric M. Taylor Center

Address 10-10 Hazen Street

East Elmhurst, NY, 11370

Defendant No. 3    Name _____    Shield #_____

Where Currently Employed _____

Address _____

_____

Defendant No. 4    Name _____    Shield #_____

Where Currently Employed _____

Address _____

_____

Defendant No. 5    Name _____    Shield #_____

Where Currently Employed _____

Address _____

_____

## II.    Statement of Claim:

State as briefly as possible the facts of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.    In what institution did the events giving rise to your claim(s) occur?

Eric M. Taylor Center, located on Rikers Island.

B.    Where in the institution did the events giving rise to your claim(s) occur?

Inside of the shower area, of the bathroom, located in Housing Unit 5 Main. Housing Unit 5 Main, is a Christian Religion Program Housing Unit.

C.    What date and approximate time did the events giving rise to your claim(s) occur?

On or around November 6, 2019, between 8:00 AM to 10:00 AM

"SEE ATTACHED"

D.    Facts: _____

**What happened to you?**

_____

_____

_____

_____

**Who did what?**

_____

_____

_____

_____

**Was anyone else involved?**

_____

_____

_____

_____

**Who else saw what happened?**

_____

_____

_____

_____

_____

## III.    Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.  No physical injuries.

_____

_____

_____

_____

_____

## IV.    Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Administrative remedies are also known as grievance procedures.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

Yes ✓ No ___    I was a sentenced inmate, at the time of the incident.

<u>Facts</u> — Page 4

II. D). On or around November 6, 2009, between 8:00 AM to 10:00 AM, in Housing Unit 5 Main, after packing up all of my personal property, which I packed in two bags, and was sitting on my bed, bed # 14, to be waiting to be escorted to the intake area of the Eric M. Taylor Center Facility, to be processed, and discharged, from the facility, for completing my sentence, Correction Officer Rodriguez approached me saying to walk to the bathroom. After I followed Correction Officer Rodriguez into the bathroom, he instructed me to walk into the shower area, and to strip completely naked. While I was removing my clothing, Correction Officer Velez, Shield # 14537, that was working in the Control room of Housing Unit 5 Main, stood up, and started to stare at me, "while laughing." I than told Correction Officer Rodriguez that I didn't feel comfortable with being subjected to a strip search in front of female staff, and Correction Officer Rodriguez said "You lost your privacy rights. You ain't got no privacy in jail. Just shut the fuck up, remove all your clothes, and throw it on the floor." Correction Officer Velez than started laughing again, saying "Ha-ha, you stinking piece of crap." After I dropped all of my clothes on the bathroom floor, officer Rodriguez instructed me to open my mouth, and lift up my tongue, where he than told me to lift up my upper lip, and pull down my lower lip. Officer Rodriguez than told me to lift up both of my arms, where he than told me to show him the back, and the front of both of my hands. He than instructed me to pull back the foreskin on my genitals, where he than told me to lift up my testicles. I was than instructed to turn around, and squat all the way to the bathroom floor, where Officer Rodriguez

<u>Facts</u> - Page 5

told me to lift up both of my feet. After I turned back around, officer Rodriguez said " Don't put your clothes back on, until I say so. Just stand here, and do not move." Correction officer Rodriguez than left the bathroom, and walked to the front of the control room, where he was assigned to work, and started having a conversation with Correction officer Velez, for about 9 to 10 minutes, while I was standing naked in the bathroom, for the whole entire time. Correction officer Velez was saying "Facts. He got nothing better to do, than coming to jail, and he wanna complain. Don't come to jail than. She again started laughing for several seconds, saying your right about that. He lucky he ain't upstate. If he snitched on somebody upstate, I can imagine what would happen to him. Yup, that's why there are alot of dead bodies upstate. Now he wanna come to jail, and be like a cry baby. That's hilarious. I have been working this job for awhile myself. I am thinking about the same thing. What was that." I than heard Velez talking more quietly, but I didn't walk close to the fench gate to hear what they was saying. I just stayed in the same place. After 9 to 10 minutes, officer Rodriguez came to the bathroom, and said "you can put your shit back on." Correction officer Velez, that was working in the control room than said " snitching against staff in jail, gets you no where," where officer Rodriguez said "exactly," where he left the bathroom. After I put all of my clothing back on, and I came out of the bathroom, officer Rodriguez said, "grab both of your bags, and go by the front gate." After I was at the front gate, with both of my bags, officer Velez opened the front gate, and handed a bunch of keys to officer

Facts — Page 6

Rodriguez, where officer Rodriguez escorted me to the front door. While I was walking to the front door, officer Velez said "looks like I don't need to pat frisk you, don't come back to jail." After I was at the front door, officer Rodriguez opened the front door, where I was than escorted to the intake area of the Eric M. Taylor Center, by another staff member, to be processed, and discharged, for completing my sentence.

II. D 2). On or about October 19, 2019, at around 3:00 PM, at the Eric M. Taylor Center, in Housing Unit 5 Main, after coming back from the Law Library, I walked to my bed, bed # 14. Several minutes later, around 3:10 PM, I started to walk to the bathroom, where inmate Craig Rugger, book and case # 349-19-01910, that sleeps in bed # 41, came out of the bathroom, and informed me, that Correction officer Velez, that was working in the control room, sprayed mace into the bathroom, through a fench wall, because she believed inmates was smoking, and inmate Craig Rugger told me not to go into the bathroom.

II. D 3). At that moment, when I started to walk back to my bed, I did not observe Correction officer Rodriguez on his post, inside Housing Unit 5 Main, which was the officer assigned to work inside Housing Unit 5 Main, to supervise all of the inmates.

II. D 4). While I was sitting on my bed, bed # 14, inmate Rugger sat next to me, where we had a conversation for

<u>Facts — Page 7</u>

about 30 to 40 minutes. During those 30 to 40 minutes, I started to feel a very strong irritation in my nose, and throat, and I began to smell mace, where I started to constantly, cough, and sneeze. My eyes was also very irritated. I was coughing so much, I started to feel pain in my throat, and I was also experiencing migraines.

II. D5). Inmate Craig Rugger was also experiencing similar medical symptoms. Shortly after the incident, inmate Craig Rugger requested medical attention, and made a witness statement.

II. D6). On October 19, 2019, shortly after the incident, I made a phone call to 311, which was assigned complaint # EC-00051005, to make a report against Correction Officer Velez, Shield # 14537.

II. D7). 2 to 3 hours later, staff approached me with a inmate voluntary statement form to complete. 20 minutes later, after submitting the completed voluntary statement form, staff escorted me to the clinic, where I was locked in a holding cell for several hours. On October 20, 2019, a little past midnight, I received medical attention, where I signed an injury to inmate report, which was dated, and timed, by the physician that examined me. I also received an Ibuprofen pain relaxing pill.

II. D8). Correction Officer Velez, made an infraction on October 20, 2019, one day after the incident, when she

Facts- Page 8

learned that a use of force allegation was made against her, where she stated that she observed inmates smoking bleach, and an unknown substance, in the bathroom, on October 19, 2019.

II D 9). Correction Officer Rodriguez, never made an infraction against any inmate regarding the incident on October 19, 2019.

II D 10). On or about October 20, 2019, one day after the incident, inmate Craig Rugger, book and case # 349-19-01910, approached me, and informed me that several inmates in Housing Unit 5 Main, instructed him to pack up his personal property, and leave Housing Unit 5 Main, because they found out he informed staff, that he saw them smoking, and that if he didn't leave Housing Unit 5 Main, he would be subjected to get beat up, so he ended packing up, and left Housing Unit 5 Main, on or about the same day.

II D 11). On or about October 22, 2019, several inmates in Housing Unit 5 Main, was served with infractions for smoking. One of the inmates Ingram Messiah, informed me he was ~~making~~ served with an infraction for smoking, in the bathroom, with other inmates, however he said he was never smoking in the bathroom, and that Correction Officer Velez, put somebody else book and case #, in his infraction, so I told inmate Ingram Messiah, I wouldn't mind making a voluntary witness statement to assist him, when he goes to see a hearing officer, for his infraction.

<u>Facts — Page 9</u>

12). After I made a written voluntary witness statement, and showed it to inmate Ingram Messiah, he showed it to several other inmates. At that time, Correction officer Rodriguez, was temporarly working in the control room, in Housing Unit 5 Main. About 10 minutes, after showing inmate Ingram Messiah my voluntary witness statement, another inmate walks to my bed, and tells me to follow him to the bathroom. When I followed him to the bathroom, several other inmates entered the bathroom. Inmate Ingram Messiah, never came in the bathroom, at that time. The inmate that told me to follow him to the bathroom, than started to read the voluntary statement that I made, where he said pack up. You got 5 minutes to pack up. I than said, I didn't mean to cause any problems, I was just trying to help the other inmate with the infraction. He than said, You snitched. He said this several times. You know officer Rodriguez job is on the line. When I tried to talk again, he cut me off saying, I don't care. Go pack your things up, you got 5 minutes. He was talking to me loud enough in the bathroom, for officer Rodriguez that was working in the control room to hear through the fench wall. Several minutes later, while I was packing up my property, one of the inmates that was in the bathroom, came to me, and told me that I don't have to pack up. He said, he just had a talk with the guy, and he said I just have to watch what I do. He said if I am talking to somebody, with something important, I should do it in a quiet area, with nobody around, so I do not get into any problems, because this is jail. A copy of the written voluntary witness statement, is attached to the complaint,

<u>Facts</u> — Page 10

and marked as Exhibit C.

D. 13). There is a round camera, attached to the ceiling, which is located in the center of Housing Unit 5 Main, which is directly in front of the control room, and directly in front of the post, where Officer Rodriguez was assigned to work at.

D. 14). My book and case # with the New York City Department of Correction at the time of the incident was 441-19-04423.

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s). _Eric M. Taylor Center, located on Rikers Island — 10-10 Hazen Street, East Elmhurst, NY, 11370_

B.    Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

Yes _✓_    No ____    Do Not Know ____

C.    Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

Yes ____    No ____    Do Not Know ____

If YES, which claim(s)? _____

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

Yes ____    No ____

If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

Yes ____    No ____

E.    If you did file a grievance, about the events described in this complaint, where did you file the grievance?
_____

1.    Which claim(s) in this complaint did you grieve? _____
_____

2.    What was the result, if any? _____
_____

3.    What steps, if any, did you take to appeal that decision? Describe all efforts to appeal to the highest level of the grievance process. _____
_____
_____
_____
_____

F.    If you did not file a grievance:

1.    If there are any reasons why you did not file a grievance, state them here: _Pursuant to Directive 3376, Inmate and Grievance Request Program, of the New York City Department of Correction, allegation's of assault, harassment, or other unprofessional conduct by DOC staff, cannot be resolved through the Inmate and Grievance Request Program, and are known as non-grievable complaints._

2.    If you did not file a grievance but informed any officials of your claim, state who you informed,

*Rev. 05/2010*

_Page 11_

when and how, and their response, if any:_____

_____

_____

_____

_____

G.   Please set forth any additional information that is relevant to, the exhaustion of your administrative remedies. I mailed a written complaint to the Inspector General's office, and the New York City Board of Correction.

A photocopy of the complaint that I mailed to the Inspector Generals office, and the New York City Board of Correction, is attached to the complaint, and marked as Exhibit 'A, and B.

Note:   You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

V.   Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount). I would like compensation against Correction officer Velez, including punitive damages, for watching and mocking me, while Correction officer Rodriguez unlawfully strip searched me, where I was naked for a lengthy period of time, and Correction officer Velez, never attempted to intervene and call for assistance Form other staff.

I would also like compensation against Correction officer Rodriguez, for violating my 8th Amendment, by subjecting me to an unlawful strip search, where I was naked for a lengthy period of time, and allowed Correction officer Velez, the female Correction officer, to watch and mock me, including punitive damages against Correction officer Rodriguez, for intentionally, and deliberately, unlawfully strip searching me, without a justifiable reason.

VI.   Previous lawsuits:

On these claims

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes ____   No ____

Page 12

Relief - Page 13

v). I would also like compensation against Correction Officer, Rodriguez, for violating my 1st Amendment, ~~and~~ by ~~subjecting~~ ~~subjecting~~ me to a retaliatory unlawful strip search, where I was naked for a lengthy period of time, and allowed Correction Officer Velez, the female correction officer, to watch, and mock me, including punitive damages against Correction Officer Rodriguez for intentionally, and deliberately, subjecting me to a retaliatory unlawful strip search, without a justifiable reason.

Additionally, I would also like compensation against Correction Officer Velez, for violating my 1st Amendment, ~~including~~ including punitive damages, for violating my 1st Amendment, for watching, and mocking me, while Correction Officer Rodriguez unlawfully strip searched me, where I was naked for a lengthy period of time, and Correction Officer Velez, never attempted to intervene, and call for assistance.

B.   If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.   Parties to the previous lawsuit:

Plaintiff _____

Defendants _____

2.   Court (if federal court, name the district; if state court, name the county) _____
_____

3.   Docket or Index number _____

4.   Name of Judge assigned to your case _____

5.   Approximate date of filing lawsuit _____

6.   Is the case still pending? Yes ____ No ____

If NO, give the approximate date of disposition _____

7.   What was the result of the case? (For example: Was the case dismissed? Was there judgment in your favor? Was the case appealed?) _____
_____
_____

**On other claims**

C.   Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?
Yes ____ No ____ N/A

D.   If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.   Parties to the previous lawsuit:

Plaintiff _____

Defendants _____

2.   Court (if federal court, name the district; if state court, name the county) _____
_____

3.   Docket or Index number _____

4.   Name of Judge assigned to your case _____

5.   Approximate date of filing lawsuit _____

6.   Is the case still pending? Yes ____ No ____

If NO, give the approximate date of disposition _____

7.   What was the result of the case? (For example: Was the case dismissed? Was there judgment in your favor? Was the case appealed?) _____
_____

Page 14

*Rev. 05/2010*

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 28 day of _August_, 20 23

Signature of Plaintiff _Anthony Henry_

Inmate Number _____

*House* ████████ Address _89-54 218 Place_
_Queens Village, NY 11427_

_____

_____

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff: _____

Page 15

Dated: 11/20/19                "Exhibit A"        Page 1

Dear Inspector Generals Office,

My name is Anthony Harry, and I am an inmate currently incarcerated at the Anna M. Kross Center, on Rikers Island. I am respectfully writing this letter, to report that I was subjected to a retaliatory unlawful strip search by DOC staff, and I would like a full, and thorough investigation to be conducted.

On or around November 16, 2019, between 8:00 AM to 10:00 AM, in Housing Unit 5 Main, a Christian Religion Program Housing Unit, after packing up all of my property, which I packed in two bags, and was sitting on my bed, bed # 14, to be waiting to be escorted to the intake area of the Eric M. Taylor Center Facility, to be processed, and discharged from the facility, for completing my sentence, Correction Officer Rodriguez approached me saying to walk to the bathroom. After I followed Officer Rodriguez into the bathroom, he instructed me to walk into the shower area, and to strip completely naked. While I was removing my clothing, Correction Officer Velez, Shield # 14537, that was working in the Control Room of Housing Unit 5 Main, stood up, and started to stare at me, "while laughing." I then told Officer Rodriguez that I didn't feel comfortable with being subjected to a strip search in front of female staff, and Officer Rodriguez said "You lost your privacy rights. You ain't got no privacy in jail. Just shut the fuck up, remove all your clothes, and throw it on the floor."

" Exhibit A "        Page 2

Correction Officer Velez, than started laughing again, saying "Ha-ha, you stinking piece of crap." After I dropped all of my clothes on the bathroom floor, Officer Rodriguez instructed me to open my mouth, and lift up my tongue, where he than told me to lift up my upper lip, and pull down my lower lip. Officer Rodriguez than told me to lift up both of my arms, where he then told me to show him the back, and the front of both of my hands. He than instructed me to pull back the foreskin on my genitals, where he than told me to lift up my testicles. I was than instructed to turn around, and squat all the way to the bathroom floor, where Officer Rodriguez told me to lift up both of my feet. After I turned back around, Officer Rodriguez said, "Don't put your clothes back on, until I say so. Just stand here, and do not move." Officer Rodriguez than left the bathroom, and walked to the front of the control room, where he was assigned to work, and started having a conversation with Correction Officer Velez, for about 9 to 10 minutes, while I was standing naked in the bathroom, for the whole entire time. After 9 to 10 minutes, Officer Rodriguez came to the bathroom, and said "You can put your shit back on." Officer Velez, that was working in the control room than said "snitching against staff in jail, gets you no where," where Officer Rodriguez said "exactly", where he left the bathroom. After I put all of my clothing back on, and I came out of the bathroom, Officer Rodriguez said, grab both of your bags, and go by the front gate. After I was at the front of the

"Exhibit A"    Page 3

gate, with both of my bags, Officer Velez opened the front gate, and handed a bunch of keys to Officer Rodriguez, where Officer Rodriguez escorted me to the front door, While I was walking to the front door, Officer Velez said looks like I don't need to pat-frisk you, don't come back to jail. After I was at the front door, Officer Rodriguez opened the front door, where I was than escorted to the intake area of the Eric M. Taylor Center Facility, by another staff member, to be processed, and discharged, for completing my sentence.

On or about October 19, 2019, at around 3:00 PM, at the Eric M. Taylor Center Facility, in Housing Unit 5 Main, after coming back from the Law Library, I walked to my bed, bed # 14. Several minutes later, around 3:10 PM, I started to walk to the bathroom, where inmate Craig Rugger, book and case # 349-19-01910 that ▬▬ sleeps in bed # 41, came out of the bathroom, and informed me that Officer Velez that was working in the control room, sprayed mace into the bathroom, through a fench wall, because she believed inmates was smoking, and inmate Craig Rugger told me not to go into the bathroom.

At that moment, when I started to walk back to my bed, I did not observe Officer Rodriguez on his post, inside Housing Unit 5 Main, which was the officer assigned to work inside Housing Unit 5 Main, to supervise all of the inmates.

"Exhibit A" Page 4

While I was sitting on my bed, bed #14, inmate Rugger sat next to me, where we had a conversation for about 30 to 40 minutes. During those 30 to 40 minutes, I started to feel a very strong irritation in my nose, and throat, and I began to smell mace, where I started to constantly cough, and sneeze. My eyes was also very irritated. I was coughing so much, I started to feel pain in my throat, and I was also experiencing migraines.

Inmate Craig Rugger was also experiencing similar medical symptoms. Shortly after the incident, inmate Craig Rugger requested medical attention, and made a witness statement.

On October 19, 2019, shortly after the incident, I made a phone call to 311, which was assigned complaint # EC-00051005, to make a report against Officer Velez, Shield # 14537.

Awhile later, a staff member escorted me to the clinic, where I was locked in a holding cell for several hours. On 10/20/19, a little past 12:00 AM, I received medical attention, and a Ibuprofen pain relaxing pill, and an injury to inmate report was generated.

Officer Velez, made an infraction on 10/20/19, one day after the incident, when she learned that a use of force allegation was made against her, where she stated that she smelled bleach, and an

"Exhibit A" Page 5

unknown substance, coming from the bathroom.

Officer Rodriguez, never made an infraction against any inmate regarding the incident on 10/19/19.

On or about 10/20/19, one day after the incident, inmate Rugger, book and case # 349-19-01910, approached me, and informed me that several inmates in Housing Unit 5 Main, instructed him to pack up his personal property, and leave Housing Unit 5 Main, because they found out he informed staff, that he saw them smoking, and that if he didn't leave Housing Unit 5 Main, he would be subjected to get beat up, so he ended packing up, and left Housing Unit 5 Main, on or about the same day.

On or about 10/22/19, several inmates in Housing Unit 5 Main, was served with infractions for smoking. One of the inmates Ingram Messiah, informed me he was served with an infraction for smoking in the bathroom, with other inmates, however he said he was never smoking in the bathroom, and that Officer Velez, put somebody else book and case #, in his infraction, so I told inmate Ingram Messiah, I wouldn't mind making a voluntary witness statement ▬▬ to assist him, when he goes to see a hearing officer, for his infraction.

After I made a written voluntary witness statement, and showed it to inmate Ingram Messiah, he showed it to several other inmates. At that time,

"Exhibit A"        Page 6

Officer Rodriguez was temporarly working in the control room, in Housing Unit 5 Main. About 10 minutes, after showing inmate Ingram Messiah my voluntary witness statement, another inmate walks to my bed, and tells me to follow him to the bathroom. When I followed him to the bathroom, several other inmates entered the bathroom. Inmate Ingram Messiah, never came in the bathroom at that time. The inmate that told me to follow him to the bathroom, then started to read the voluntary statement that I made, where he said pack up. You got 5 minutes to pack up. I then said, I didn't mean to cause any problems, I was just trying to help the other inmates with the infraction. He then said, you snitched. He said this several times. You know Officer Rodriguez job is on the line. When I tried to talk again, he cut me off saying, I don't care. Go pack your things up. You got 5 minutes. He was talking to me loud enough in the bathroom, for Officer Rodriguez that was working in the control room to hear through the bench wall. Several minutes later, while I was packing up my property, one of the inmates that was in the bathroom, came to me, and told me that I don't have to pack up. He said, He just had a talk with the guy, and he said I just have to watch what I do. A copy of the written voluntary witness statement, is attached to the complaint, and Marked as Exhibit C.

There is a round camera, attached to the ceiling, which is located in the center of Housing Unit 5 Main, which is directly in front of the control room, and directly in front of the ▬▬▬▬ post, where

"Exhibit A" Page 7

Officer Rodriguez was assigned to work at.

My book and case # at the time of the incident was, 441-19-04423.

Thank you very much for your time, and attention, in investigating this incident. It is appreciated.

Respectfully Submitted

Anthony Harry

Dated: 10/29/19          "Exhibit B"    Page 1

Dear New York City Board Of Correction,

My name is Anthony Harry, and I am an inmate currently incarcerated at the Eric M. Taylor Center Facility, on Rikers Island. My book and case # is 441-19-04423. I am respectfully writing this letter, to report that my medical treatment was delayed for several hours, by New York City Department Of Correction Staff, after I made a use of force allegation against a Correction Officer, and I am respectfully requesting that a full investigation be conducted in this matter.

On or about October 19, 2019, at around 3:00 PM, at the Eric M. Taylor Center Facility, in Housing Unit 5 Main, after coming back from the Law Library, I walked to my bed, bed # 14. Several minutes later, around 3:10 PM, I started to walk to the bathroom, where inmate Craig Rugger, book and case # 349-19-01910, that sleeps in bed # 41, came out of the bathroom, and informed me that Correction Officer Velez, Shield # 14537, that was working in the control room, sprayed mace into the bathroom, through a fench wall, because she believed inmates was smoking, and inmate Rugger told me not to go into the bathroom.

At that moment, when I started to walk back to my bed, I did not observe Correction Officer Rodriguez on his post, inside Housing Unit 5 Main, which was the officer assigned to supervise all of the inmates in the Housing Unit.

"Exhibit B"  Page 2

While I was sitting on my bed, bed #14, inmate Rugger sat next to me, where we had a conversation for about 30 to 40 minutes.

During those 30 to 40 minutes, I started to feel a very strong irritation in my nose, and throat, and I began to smell mace, where I started to constantly cough, and sneeze. My eyes was also very irritated. I was coughing so much, I started to feel pain in my throat, and I was also experiencing migraines.

Inmate Craig Rugger, was also experiencing similar medical symptoms. Shortly after the incident, inmate Craig Rugger, requested medical attention, and also submitted an inmate voluntary statement form.

2 to 3 hours later, staff approached me with a inmate voluntary statement form to complete. 20 minutes later, after submitting the completed voluntary statement form, staff escorted me to the clinic, where I was locked in a holding cell for several hours.

On October 20, 2019, a little past midnight, I received medical attention, where I signed an injury to inmate report, which was dated, and timed, by the physician that examined me. I also received an Ibuprofen pain relaxing pill.

"Exhibit B" Page 3

Correction Officer Velez, made an infraction on October 20, 2019, one day after the incident, when she learned that a use of force allegation was made against her, where she stated that she smelled bleach, and an unknown substance, coming from the bathroom.

There is a round camera, attached to the ceiling, which is located in the center of Housing Unit 5 Main, which is directly in front of the control room, and directly in front of the post, where Officer Rodriguez was assigned to work at, which should show how long Officer Rodriguez was off his post, after 3:10 PM, on October 19, 2019.

I would greatly appreciate, a full, and thorough investigation, as soon as possible. Thank you.

Respectfully Submitted,

Anthony Harry

\* I made a phone call to 311, which was assigned complaint # EC-00051005, shortly after the incident, on October 19, 2019, and the date, and time, I called to make a complaint with 311, should be on file. New York City Department of Correction staff didn't approach me to complete an inmate voluntary statement form, until 2 to 3 hours later. \*

Exhibit C

# Voluntary Witness Statement

I, inmate Anthony Harry, book and case # 441-19-04423, NYSID # 023649981L, submit this written, and signed, voluntary witness statement, without any threat of any Kind

On or about October 19, 2019, at around 3:00 PM, in Housing Unit 5 Main, after coming back from the Law Library, I walked to my bed, bed # 14. Several minutes later, around 3:10 PM, I started to walk to the bathroom, where inmate Craig ▇ Rugger, book and case # 349-19-01910, that sleeps in bed # 41, came out of the bathroom, and informed me that Correction Officer Velez, Shield # 14537, that was working in the control room, sprayed mace into the bathroom, through a fench wall, because she believed inmates was smoking, and inmate Rugger told me not to go into the bathroo At that moment, I did not see any inmate go in, or come outside the bathroom, when I started to walk back, to m bed, I did not observe Officer Rodriguez on his post, inside Housing Unit 5 Main, which was the officer assigned to supervise all of the inmates, inside the Housing Unit.

Shortly after the incident, inmate Craig Rugger, and me, submitted an inmate voluntary statement form, and the both o us requested, and received medical attention, for constant coughing, and sneezing, from the smell of mace.

DATED: October 22, 2019

Anthony Harry
Print Name

_Anthony Harry_
Signature

Anthony H.

8?-54   218  Place

Queens  Village, NY,  11427

United  States  District  Court

Eastern  District  Of  New  York

Codman  Plaza  East

NY,  11201

Pro  Se  Office