UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ANTHONY HARRY,

                    *Plaintiff,*

     – against –

JEREMY RODRIGUEZ; DIONA VELEZ,

                   *Defendants.*

---

**MEMORANDUM & ORDER**
22-cv-03995 (NCM) (SDE)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Anthony Harry brings this action against defendants Correctional Officer ("C.O.") Jeremy Rodriguez and C.O. Diona Velez alleging that while he was incarcerated defendants violated his First and Eighth Amendment rights, and C.O. Velez failed to intervene. Before the Court is defendants' Motion for Summary Judgment. *See generally* Mot., ECF No. 99.[1] For the reasons stated herein, defendants' motion is **GRANTED**.

## BACKGROUND

The facts as described below are undisputed, unless otherwise indicated.[2] On September 5, 2019, plaintiff began serving a sentence of incarceration for a crime

---

[1]    The Court hereinafter refers to defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, ECF No. 99, as the "Motion"; plaintiff's Declaration of Pro Se Plaintiff Anthony Harry in Support of Plaintiff Opposition to Defendants' Motion for Summary Judgment, ECF No. 102-1, as the "Opposition"; and defendants' Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment, ECF No. 107, as the "Reply."

[2]    The facts are drawn from Defendants Rodriguez and Velez's Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Defs. 56.1"), ECF No. 88-1; Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1"), ECF No. 102; Defendants' Reply to Plaintiff's Response to Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Defs. 56.1 Reply"), ECF No. 106; and the Second Amended Complaint ("SAC"),

unrelated to the relevant events here. *See* Pl. 56.1 ¶ 1. Plaintiff was incarcerated at the New York City Department of Corrections ("DOC") facility on Rikers Island. *See* Pl. 56.1 ¶ 2.

### A. *October 19, 2019 Incident*

On October 19, 2019, plaintiff made a complaint with 311—the City of New York's customer service hotline—on behalf of another individual who plaintiff believed was subject to unnecessary use of force by C.O. Velez when she used mace against inmates in the bathroom. SAC 6–7;[3] Defs. 56.1 Reply ¶¶ 14–16. In connection with his complaint against C.O. Velez, plaintiff gave a written statement to investigators. Pl. 56.1 ¶ 18. The written statement also implicated C.O. Rodriguez who was assigned to work in the section of the housing unit where the bathroom was located. *See* SAC 6, 9–10.

Although plaintiff was not present in the bathroom during the incident, plaintiff inhaled mace particles, experienced severe medical symptoms, and requested medical attention. Pl. 56.1 ¶ 16. Plaintiff separately sent a letter to the Board of Correction to report the October 19, 2019 incident; the letter complained of C.O. Velez and C.O. Rodriguez's conduct and requested a "full and thorough investigation" of the incident. SAC, Ex. B at 3; *see also* Defs. 56.1 ¶ 17.

### B. *November 6, 2019 Incident*

Plaintiff's term of incarceration was set to conclude on November 6, 2019. *See* Pl. 56.1 ¶¶ 1–2. That same day, C.O. Rodriguez and C.O. Velez subjected plaintiff to a strip

---

ECF No. 43-1. While courts usually do not consider the allegations in the complaint as admissible evidence at the summary judgment stage, allegations in a verified complaint may be treated "as an affidavit for summary judgment purposes." *Curtis v. Cenlar FSB*, 654 F. App'x. 17, 20 (2d Cir. 2016) (summary order).

[3]    Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

search. Defs. 56.1 Reply ¶ 19. C.O. Rogriguez told plaintiff to step into the shower area of a bathroom and strip naked. Defs. 56.1 Reply ¶ 20. C.O. Velez, a woman, was not in the bathroom but watched plaintiff as he was searched from the control room and laughed while plaintiff undressed. Defs. 56.1 Reply ¶¶ 21, 25. During the search, C.O. Rodriguez instructed plaintiff "to open his mouth and lift up his tongue, to show him the back of his hands and feet, to pull up the foreskin of his testicles, and to lift up his feet." Defs. 56.1 Reply ¶ 22. Neither officer made physical contact with plaintiff. Defs. 56.1 Reply ¶ 23. On November 20, 2019, plaintiff sent a letter to the Inspector General's Office to report the incident. Defs. 56.1 Reply ¶ 13.

Plaintiff's suit alleges that the November 6, 2019 strip search was in retaliation for plaintiff's October 2019 complaint against C.O. Velez and C.O. Rodriguez and letter to the Board of Correction. *See* SAC 7–10.

### C. General Release

Approximately 10 months later on September 3, 2020, in connection with a separate, unrelated personal injury case (hereinafter "*Harry II*"), plaintiff, by and through counsel, reached a settlement with the New York City Comptroller's Office. Defs. 56.1 Reply ¶ 26; *see* Anderson Decl., Ex. G at 3 ("General Release"), ECF No. 98-7; *see also* Anderson Decl., Ex. F at 2 (Letter from Plaintiff's Attorney Regarding Settlement of *Harry II*), ECF No. 98-6. As part of the settlement, plaintiff signed a General Release in consideration for $3,000.00. Defs. 56.1 Reply ¶¶ 27–28; *see* General Release 2–3.

The relevant terms of the General Release provide:

> ANTHONY HARRY . . . as "RELEASOR", . . . having received independent legal advice in this matter . . . voluntarily, knowingly, and willingly releases and forever discharges the City of New York, and all past and present officials[,] . . . employees, agents[,] . . . and representatives of the City of New

3

> York, . . . collectively the "RELEASEES", from any and all liability, claims, or rights of action alleging a violation of civil rights and any and all claims [or] causes of action . . . which RELEASOR . . . had, now has or hereafter can, shall, or may have . . . against the RELEASEES for, upon or by reason of any matter, cause or thing whatsoever that occurred through the date of this RELEASE. This RELEASE and settlement constitutes complete payment and satisfaction for all damages and injuries, including all claims for costs, expenses, attorney's fees and disbursements.

General Release 2. Directly above the signature line, the release stated, in bold type: "THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT." General Release 3.

### D. Procedural Background

Plaintiff commenced this suit on August 29, 2022, *see* Compl., ECF No. 1, and filed a Second Amended Complaint on September 13, 2023, *see* SAC, asserting C.O. Rodriguez and C.O. Velez subjected him to a retaliatory strip search thereby violating his rights under the First Amendment and the prohibition against cruel and unusual punishment under the Eighth Amendment. Further, he claims C.O. Velez failed to intervene to prevent the unlawful strip search. SAC 12. On June 5, 2025, defendants moved for summary judgment. *See* Mot. Plaintiff opposes defendants' motion. *See* Opp'n.

### LEGAL STANDARD

The standard for summary judgment is well settled. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" on a claim or defense. Fed. R. Civ. P. 56(a). Facts are in genuine dispute when "the jury could reasonably find for" the

4

non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).[4]

If the non-moving party has the burden of proof at trial, "the moving party need only demonstrate that there is a lack of evidence to support the non-movant's claim." *Dolan v. Cassella*, 543 F. App'x 90, 90 (2d Cir. 2013) (summary order); *see also Miller v. Terrillion*, 436 F. Supp. 3d 598, 600 (E.D.N.Y. 2020) ("Summary judgment is appropriate if the nonmoving party who bears the burden of proof at trial fails to offer proof concerning an essential element of the nonmoving party's case."). Where the movant satisfies this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial and may not rest upon the mere allegations or denials of his pleading." *Dolan*, 543 F. App'x at 91. The non-moving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). That is, "there must be sufficient evidence from which a reasonable finder of fact could find in the non-movant's favor." *Dolan*, 543 F. App'x at 91.

### DISCUSSION

The Court addresses three of defendants' principal arguments on summary judgment: (1) defendants statement of material facts must be deemed admitted because plaintiff forfeited the opportunity to submit a responsive counterstatement, and thus, there are no disputed facts, Mot. 10–11; (2) the *Harry II* General Release bars this action,

---

4       Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

Mot. 11–13; and, (3) plaintiff failed to exhaust available administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), Mot. 13–15.[5]

A. *Plaintiff's Failure to Respond to Defendants' 56.1 Statement*

Defendants contend that plaintiff's counterstatement should be considered untimely, and the Court should construe defendants' statement of facts as admitted. Mot. 10–11. Pursuant to Local Rule 56.1, defendants filed a pre-motion conference ("PMC") request accompanied by their Rule 56.1 statement of material facts on February 11, 2025. *See* Defs. PMC Letter, ECF No. 88; Defs. 56.1. Plaintiff did not respond to defendants' 56.1 statement of facts in his March 17, 2025 PMC response letter. *See* Pl. PMC Resp. Letter, ECF No. 89. However, plaintiff filed a Rule 56.1 counterstatement with his opposition to defendants' motion for summary judgment on July 22, 2025. Pl. 56.1.[6] Defendants argue that this delay in responding to their Rule 56.1 statement renders their factual statements admitted. Mot. 10–11.

Local Rule 56.1 provides that "any motion for summary judgment under Fed. R. Civ. P. 56 must be accompanied by a separate, short, and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). An opposition to a motion for summary judgment "must include a

---

[5]     Defendants make two additional arguments: (1) the November 6, 2019 incident was not cruel and unusual punishment, Mot. 15; and (2) the relief plaintiff seeks, namely compensatory damages, must be dismissed, Mot. 16. Because the Court finds for defendants on grounds that the General Release bars this suit and that plaintiff failed to exhaust administrative remedies, the Court need not reach these arguments.

[6]     Plaintiff also asserts that he did not initially receive a copy of defendants' 56.1 statement of facts attached to defendants' motion for summary judgment. Opp'n 4. That deficiency was cured pursuant to a Court order directing defendants to mail documents to plaintiff. *See* Order dated June 24, 2025.

correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party." Local Civ. R. 56.1(b).

"[A] nonmoving party's failure to respond to a Rule 56.1 statement *permits* the court to conclude that the facts asserted in the statement are uncontested and admissible." *Brown v. City of New York*, No. 21-cv-04632, 2023 WL 2908661, at *5 (S.D.N.Y. Jan. 30, 2023) (quoting *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d. Cir. 2009)) (emphasis added); *see also Vasquez v. Reilly*, No. 15-cv-09528, 2018 WL 2768648, at *1 n.1. (S.D.N.Y. June 8, 2018). Failure to submit a Rule 56.1 counterstatement does not mandate a presumption that the moving party's facts are admitted. *See, e.g.*, *Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC*, No. 09-cv-02614, 2011 WL 6329194, at *4 (E.D.N.Y. Dec. 16, 2011) ("[D]efendants' failure does not relieve plaintiff of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." (citing *Holtz v. Rockefeller & Co, Inc.*, 258 F.3d 62, 74 (2d Cir. 2001))); *Brown*, 2023 WL 2908661, at *5 (conducting review of the record where a pro se litigant failed to file a 56.1 counterstatement).

This is especially true for parties proceeding pro se. "[I]t is well established that a court is ordinarily obligated to afford a special solicitude to pro se litigants, particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). This means that the Court must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *Id*. at 56. The Court has "broad discretion to overlook [a pro se plaintiff's] noncompliance with the local rule and to conduct an assiduous review of the record."

7

*Manns v. United Airlines*, No. 13-cv-03668, 2016 WL 6826761, at \*1 n.1 (E.D.N.Y. Nov. 17, 2016).

While plaintiff failed to submit a 56.1 counterstatement in his response to defendants' PMC request, he nevertheless submitted a statement of facts with his opposition to summary judgment. *See* Pl. 56.1. Defendants availed themselves of the opportunity to respond to plaintiff's counterstatement. *See* Defs. 56.1 Reply. In light of plaintiff's pro se status and that defendants have not identified that they will suffer any prejudice, the Court accepts plaintiff's counterstatement as properly filed under the local rules. Indeed, courts in this circuit have considered the merits of a plaintiff's claim even when he fails to submit a counterstatement altogether, *see, e.g.*, *Houston*, 27 F. Supp. 3d at 349, and, in some cases, conducted an independent review of the record on the litigant's behalf, *see, e.g.*, *Wade v. Montas*, No. 19-cv-02687, 2023 WL 5510599, at \*3 (E.D.N.Y. Aug. 25, 2023); *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 348–49 (E.D.N.Y. 2014) (acknowledging independent review to ensure uncontroverted evidence supports defendants' Rule 56.1 statement where plaintiffs failed to file a Rule 56.1).

B. *General Release*

Next, defendants argue that plaintiff's claims are barred by the General Release in *Harry II*. *See* Mot. 11–13. Defendants contend that the General Release, signed by plaintiff on September 3, 2020, by and through an attorney, releases defendants from any and all of plaintiff's potential claims preceding the date of the release, which includes the November 6, 2019 strip search raised in this action. The parties dispute whether the release can be enforced, and, if so, whether its terms are ambiguous.

   1. *Enforcement of the General Release*

Plaintiff argues that defendants failure to raise the release as an affirmative defense immediately upon learning of its existence constitutes a waiver. Opp'n 2–3 (citing *Caraballo v. City of New York*, No. 18-cv-10335, 2023 WL 2689725, at *4–5 (S.D.N.Y. Mar. 29, 2023) and *Liverpool v. Davis*, No. 17-cv-03875, 2020 WL 7398745, at *3 (S.D.N.Y. Dec. 17, 2020)). The mechanism to do so would have been to amend their answer, plaintiff adds. Opp'n 2–3. Defendants argue that "any delay in raising the General Release does not preclude its enforcement." Reply 11.

Failure to plead an affirmative defense in a timely manner does not necessarily result in its waiver. *See, e.g.*, *Caraballo*, 2023 WL 2689725, at *3–5. Where a defendant fails to timely raise a defense in its answer, "the district court may construe the motion for summary judgment as a motion to amend the defendant's answer." *Saks*, 316 F.3d at 350–51. This Court has discretion to "entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings," *Id.* at 350, pursuant to Fed. R. Civ. P. 15(a). *See CWS Invs., Inc. v. Manners*, No. 23-cv-02188, 2025 WL 2161240, at *4 (E.D.N.Y. Mar. 8, 2025). "Prejudice to the nonmoving party is perhaps the most important factor for the Court to consider." *Soley v. County of Nassau*, No. 18-cv-00377, 2021 WL 1554834, at *5 (E.D.N.Y. Apr. 20, 2021). Rule 16 governs a court's consideration of a late amendment to an answer. *Caraballo*, 2023 WL 2689725, at *4. Prejudice to the non-moving party under Rule 15(a) is balanced with Rule 16's requirement to show "good cause which depends on the diligence of the moving party" when determining whether a late affirmative defense may be entertained at summary judgment. *Reyes v. Phoenix Beverages, Inc.*, 207 F. Supp. 3d 206, 217 (E.D.N.Y. 2016).

Here, defendants do not explain why they failed to raise the General Release until the summary judgment stage, three years after the commencement of this suit and the close of discovery.[7] Nor do defendants state when they learned of the General Release or whether the General Release was readily available to them. *Cf. Caraballo*, 2023 WL 2689725, at *5 (finding defendants were diligent when they located the release in an electronic database and informed the court seven days after learning the release existed). Presuming, as plaintiff contends, Opp'n 4, defendants learned about the General Release at plaintiff's deposition in July 2024, defendants raised the affirmative defense seven months later in their PMC letter. *See* Defs. PMC Letter. Nevertheless, this lapse of time alone does not support a finding of bad faith or dilatory motive on defendants' part.

Moreover, plaintiff does not argue that he was prejudiced by this delay of seven months. Indeed, he likely could not given that he was a signatory to the General Release as discussed *supra*. Plaintiff had an opportunity to respond to this affirmative defense in his response to defendants' PMC request, *see* Pl. PMC Resp., and again when he opposed their motion for summary judgment on July 22, 2025, *see generally* Opp'n. Further, plaintiff does not assert that he needs additional discovery to address the General Release, that any such discovery would "require [him] to expend significant additional resources to conduct discovery", or that addressing the affirmative defense will "significantly delay the resolution of the dispute." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008).

---

[7]     Discovery in this case closed on April 25, 2024, with the exception of plaintiff's deposition, on July 16, 2024. *See* ECF Nos. 74, 79. Further, after plaintiff's deposition, he moved to re-open discovery, *see* ECF Nos. 78–79, which the Magistrate Judge denied in its January 14, 2025 order simultaneously setting the deadline for the parties' to file pre-motion requests, ECF No. 84.

Accordingly, defendants can seek to enforce the General Release.

2. *Terms of the General Release*

The next question is whether the Court should give effect to the terms of the General Release. "[S]ettlement agreements are contracts and must therefore be construed according to general principles of contract law." *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002); *see also Mateo v. Carinha*, 799 F. App'x 51, 53 (2d Cir. 2020) (summary order). Where a dispute "focuses on contested contract terms, and those terms are clear and unambiguous, their proper interpretation is a question of law for the Court to decide rather than a question of fact for a jury to decide." *Crane Co. v. Coltec Indus. Inc.*, No. 98-cv-08838, 1999 WL 38251, at *2 (S.D.N.Y. Jan. 28, 1999), *aff'd*, 171 F.3d 733 (2d Cir. 1999). However, where "the language of a contract is ambiguous, its construction presents a question of fact that may not be resolved by the court on a motion for summary judgment." *Shadlich v. Rongrant Assocs., LLC*, 887 N.Y.S.2d 228, 229 (2d Dep't 2009). "A contract is ambiguous if the terms are susceptible to more than one reasonable interpretation." *Hong v. Renval Constr., LLC*, 194 N.Y.S.3d 541, 542 (2d Dep't 2023).

Plaintiff argues that the terms of the General Release are ambiguous because the second paragraph of the release begins with "[i]n further consideration of" and ends with "alleged in the aforementioned claim." General Release 2; *see* Opp'n 5–7. Plaintiff contends these clauses indicate that the General Release only applies to the claims brought in *Harry II*. Opp'n 6. Further, plaintiff argues the release covered only those cases currently pending against the City of New York at the time of signing and not future lawsuits. Opp'n 5. And, since the General Release was signed in 2020 and the present lawsuit commenced in 2022, the General Release should not preclude the instant matter. Opp'n 6.

11

However, the terms of the release are clear and unambiguous. The first paragraph of the General Release in pertinent part, provides that plaintiff, as releasor, "having received independent legal advice. . . voluntarily, knowingly, and willingly releases and forever discharges. . . employees, . . . agents, . . . and representatives of the City of New York, . . . collectively the 'RELEASEES'," from any claims "which RELEASOR . . . had, now has or hereafter can, shall, or may have . . . against the RELEASEES for, upon or by reason of any matter, cause or thing whatsoever that occurred through the date of this RELEASE." General Release 2. Further, directly above the signature line, the release stated, in bold type: "THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT." General Release 3.

This language precludes plaintiff—who was represented by counsel when he signed the General Release—from bringing claims that accrued through September 3, 2020. *See* General Release 2–3. Specifically, plaintiff released the City of New York and its employees from any claims which he may have against them "for . . . any matter, cause or thing whatsoever that occurred through the date of this RELEASE." General Release 2. That includes the present action against the defendants. Nearly identical language has been construed as clear and unambiguous by courts in the Second Circuit. *Mateo*, 799 F. App'x at 52–53; *Valdiviezo v. Greer*, 787 F. App'x 48, 48–49 (2d Cir. 2019) (summary order) (finding that contract language "releas[ing] and forever discharg[ing] the City of New York . . . and representatives of the City of New York . . . from any and all claims . . . which [plaintiff] had, now has or hereafter can, shall, or may have . . . against [releasees] for . . . any matter . . . that occurred through the date of this RELEASE," precluded the plaintiff's claims that accrued before signing of the release); *Wade*, 2023 WL 5510599, at *2–3 (same); *Caraballo*, 2023 WL 2689725, at *2  (same).

12

While the second paragraph does contain language specific to *Harry II*, such as "[i]n further consideration of the payment set forth above," this does not negate the broad release language in the first paragraph. These broad terms release defendants from potential claims arising from events that took place up to the date the release was signed. *See* General Release 2. The date the suit commenced has no bearing. The terms of the release are "clearly operative": the City of New York and its employees are released from liability "not only as to all controversies and causes of action . . . which . . . actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies." *Tromp v. City of New York*, 465 F. App'x 50, 52 (2d Cir. 2012) (summary order) (quoting *A.A. Truck Renting Corp. v. Navistar, Inc.,* 916 N.Y.S.2d 194, 196 (2d Dep't 2011)) (discussing general release language that is substantially similar to the case at bar).

Therefore, even viewing the evidence in the light most favorable to plaintiff as the non-movant, the terms of the General Release unambiguously release the City of New York and its "past and present officials, officers [and] employees" from "liability, claims, or rights of action alleging a violation of [plaintiff's] civil rights . . . that occurred through the date of" September 3, 2020. General Release 2. Plaintiff's claim for violation of his First and Eighth Amendment rights arises from an incident that occurred on November 6, 2019, prior to the date of the release. Thus, the General Release is dispositive, rendering summary judgment appropriate.

C. *Exhaustion of Remedies Under PLRA*

Even in the absence of the General Release, defendants are entitled to summary judgment because a reasonable juror could not find that plaintiff complied with the requirements of the PLRA. The PLRA mandates that "[n]o action shall be brought with

respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner confined in any jail . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Importantly, the requirement that a plaintiff exhaust administrative remedies through the prison grievance system is an affirmative defense, not an element of the plaintiff's claim that he must plead." *Alexander v. City of New York*, No. 24-cv-08084, 2025 WL 3640231, at *2 (S.D.N.Y. Dec. 16, 2025) (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007)).

Defendants argue that plaintiff was required to exhaust the grievance procedure outlined in the DOC's Inmate Rules and Inmate Handbook ("Handbook") and file a grievance through their Inmate Grievance and Request Program ("IGRP"). Instead, plaintiff wrote to the Inspector General's Office. Mot. 13–15. The parties disagree about the grievance procedure in effect on November 6, 2019.

Plaintiff alleges that the 2012 grievance procedure was in force. Pl. 56.1 ¶ 3 (citing Directive 3376 ("2012 IGRP Policy")); Defs. 56.1 Reply ¶ 3. According to plaintiff, assault and harassment complaints against DOC staff are non-grievable issues and are not subject to the IGRP process set forth in the 2012 IGRP Policy. *See* Opp'n 8. Thus, he was exempt from filing a grievance. *See* Pl. 56.1 ¶ 3.

Defendants argue that the 2018 grievance procedure was in fact the applicable policy at the relevant time. *See* Defs. 56.1 Reply ¶ 3; *see also* Anderson Decl. 2, ECF No. 105; Anderson Decl., Ex. H ("2018 IGRP Policy"), ECF No. 105-1.[8] And, the 2018 IGRP

---

[8] Defendants moving papers first argue that the grievance policy in the Handbook was in effect, *see* Anderson Decl. ¶ 4, ECF No. 98; *see also* Def. 56.1 Reply ¶ 3; but, in their Reply papers assert that the 2018 IGRP Policy was in effect. *See* Anderson Decl. 2, ECF No. 105; Anderson Decl., Ex. H ("2018 IGRP Policy"), ECF No. 105-1.Defs. 56.1 ¶ 3. The Court only addresses defendants' arguments made on the 2018 IGRP Policy because it appears both parties agree that the policy in the Handbook was not in effect.

Policy required plaintiff to complete an inmate grievance complaint. *See* Reply 11–13; Defs. 56.1 Reply ¶ 3. In any event, even if the 2012 IGRP Policy was applicable, defendants argue that the policy does not state that assault and harassment complaints are exempt from the grievance process, so plaintiff would have been required to avail himself of its procedure anyway. *See* Reply 11.

Here, it is undisputed that the underlying events took place on November 6, 2019. Based on the record, it is also undisputed that the 2012 IGRP Policy was not in effect. Instead, the 2018 IGRP Policy was applicable. *See* 2018 IGRP Policy 1 (stating the policy is effective on December 10, 2018 and supersedes the version dated September 10, 2012). The 2018 IGRP Policy does not explicitly distinguish between grievable and non-grievable categories of complaints, rather, it outlines the steps and procedures for review of all complaints.[9] Regardless of the category of the complaint, the 2018 IGRP Policy contemplates that potentially non-grievable complaints will be filed, and indicates the next steps for such grievances. 2018 IGRP Policy 14. As relevant here, grievances from inmates related to staff misconduct are forwarded by the Service Desk[10] to the Investigations Division. 2018 IGRP Policy 4. Thus, even if the conduct alleged is non-

---

[9]     The formal grievance slip itself, Form 7101R, cited to in the 2018 IGRP Policy, does include a list of grievable and non-grievable issues. Form 7101R is used to commence the grievance process. *See* 2018 IGRP Policy 1 (citing DOC Form 7101R, OCGS Inmate Statement Form ("Form 7101R")), Sept. 14, 2018, https://perma.cc/3KCR-FZYD. The Court has discretion to take judicial notice of public records and information published on government websites for the fact that the statements were made. *Zapata v. Stefanski*, No. 24-cv-03785, 2026 WL 292148, at *3 n.1 (E.D.N.Y. Feb. 4, 2026). Accordingly, the Court takes judicial notice of Form 7101R for the fact that categories of complaints are listed on the applicable for the 2018 IGRP Policy.

[10]     Service Desk is the "application used by the D[OC] to monitor, from inception to completion, all received grievances, requests, and 311 correspondence." 2018 IGRP Policy 3.

grievable, as plaintiff contends, the policy still outlined that a grievance was to be filed and then ultimately directed to the correct recipient. 2018 IGRP Policy 4; *see Massey v. Michele*, No. 20-cv-07621, 2022 WL 1493269, at *3 (S.D.N.Y. May 11, 2022) (holding "[t]he IGRP also establishes specific procedures for non-grievable complaints, or complaints that cannot be fully resolved through the grievance process"), *report and recommendation adopted*, 2022 WL 4292506 (Sept. 16, 2022).

Furthermore, even if plaintiff's grievance relating to staff misconduct falls outside the IGRP process, this exception does not preclude summary judgment for defendants. Instead, even "when the exception applies and the full suite of IGRP procedures are not required, an inmate must still file a formal grievance to exhaust all remedies." *House v. City of New York*, No. 18-cv-06693, 2020 WL 6891830, at *9 (S.D.N.Y. Nov. 24, 2020) (quoting *Alicea v. City of New York*, No. 16-cv-07347, 2020 WL 1528478, at *3 (S.D.N.Y. Mar. 31, 2020)). This is true even if the incarcerated person is not required to complete the rest of the IGRP process after filing their grievance. *Alicea*, 2020 WL 1528478, at *3.

It is undisputed that plaintiff did not file a grievance. *See* Defs. 56.1 Reply ¶ 12. Instead, plaintiff sent a letter to the Inspector General's Office. [11] Further, plaintiff does not allege that prison officials attempted to thwart his knowledge of or access to the grievance process. *See Ross v. Blake*, 578 U.S. 632, 644 (2016); *see also Vidro v. Erfe*, No. 18-cv-00567, 2019 WL 4738896, at *8 (D. Conn. Sept. 26, 2019). Indeed, the IGRP

---

[11] The grievance processes outlined in the 2012 and 2018 policies do not indicate that notifying the Inspector General is a step in the grievance process. *See* 2012 IGRP Policy; 2018 IGRP Policy.

process was available to him, and plaintiff was aware of the grievance process as evident from his filing a 311 complaint[12] concerning staff misconduct in October 2019.

Because plaintiff failed to file a formal grievance slip, he did not avail himself of all remedies available as required by the PLRA. Thus, defendants are entitled to summary judgment based on plaintiff's failure to exhaust administrative remedies.

## CONCLUSION

For the forgoing reasons, defendants' motion for summary judgment is **GRANTED**. The Clerk of Court is respectfully directed to enter judgment consistent with this Order, to mail a copy of this Memorandum and Order and judgment to plaintiff, and to mark the case as closed.

**SO ORDERED.**

_/s/ Natasha C. Merle_
NATASHA C. MERLE
United States District Judge

Dated:      February 24, 2026
            Brooklyn, New York

---

[12]    An incarcerated person may file a complaint by calling 311, the City of New York's customer service hotline. 2018 IGRP Policy 3, 13. If a 311 complaint is non-grievable—meaning not subject to the grievance process—the complaint shall be "task[ed] out in Service Desk to the appropriate unit for handling." 2018 IGRP Policy 13.